UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

George Amador,

                    Petitioner,

vs.                                    Case No.  2:06-cv-217-FtM-29DNF

Secretary, Florida Department of
Children and Families Services,

                    Respondent.

_____


### OPINION AND ORDER

#### I. Status

Petitioner George Amador (hereinafter "Amador" or "Petitioner") initiated this action by filing a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. #1, Petition) on April 26, 2006.  Petitioner challenges a December 18, 2001 Final Judgment/Order Determining Sexual Predator Status, resulting in Petitioner's indefinite civil commitment.  Petition at 2.  The Petition identifies two grounds for relief:

>     (1)  The trial court lost jurisdiction to proceed to
>          trial;
>
>     (2)  The lower tribunal court allowed a manifest
>          injustice against Petitioner pursuant to Florida
>          Statute § 916.33(3)(E).

Id. at 6, 8.  Petitioner filed a memorandum of law in support of the Petition on May 9, 2006 (Doc. #3, Memorandum) and Supplement to the Petition on June 14, 2006 (Doc. #6, Supplement).  In compliance with the Court's Order to Show Cause (Doc. #8), Respondent filed a

Response to the Petition (Doc. #17), and submitted exhibits in paper format in support of the Response (App. 1-8). <u>See</u> Index to Appendix to Response to Petition for Writ of Habeas Corpus and Memorandum of Law (Doc. #20). Petitioner filed a Reply to the Response (Doc. #28, Reply) with exhibits in support of his Reply. This matter is now ripe for review.

## II.  Factual and Procedural History

On February 19, 1999, the State of Florida filed a "Petition for Involuntary Civil Commitment Under F.S. 916 Jimmy Ryce Act" in the Twentieth Judicial Circuit, in and for Collier County, seeking a probable cause determination that Amador is a sexually violent predator, pursuant to the Jimmy Ryce Act, §§ 916.31 - 916.49, Florida Statutes (Supp. 1998).[1]  App. 3, Exh. 1 at VI(A).  The

---

[1]The Jimmy Ryce Act, is codified at Florida Statute § 394.910 *et. seq.* (2009).  The Act provides that the agency having custody of a person convicted of a sexually violent offense must provide certain information to a multi-disciplinary team and the state attorney in the circuit where the person was last convicted of the sexually violent offense prior to the person's release from confinement.  Fla. Stat. § 394.913(1)(a).  Within 180 days after receiving such notice, "a written assessment as to whether the person meets the definition of a sexually violent predator and a written recommendation" is made by the multi-disciplinary team and provided to the state attorney.  Fla. Stat. § 394.913(3)(e).  After review, the state attorney "may file a petition with the circuit court alleging that the person is a sexually violent predator and stating facts sufficient to support such allegation."  Fla. Stat. § 394.914.  The circuit court shall "determine that there is probable cause to believe that the person is a sexually violent predator."  Fla. Stat. § 394.915(1).  If the court finds that probable cause exists, then the person "must be held in custody in a secure facility without opportunity for pretrial release or release during the trial proceedings," even though the person has already completed his criminal sentence for the underlying sexual
(continued...)

petition sought to have Amador detained, upon his February 21, 1999 release from the Florida Department of Corrections, and held in a secure facility, pursuant to § 916.35(1), Florida Statutes (Supp. 1998), pending further proceedings. Id. at VI(B). Further, if Amador was proven to be a sexually violent predator at trial, the State asked that he be committed to the Department of Children and Families for control, care, and treatment until such time that it is safe for Amador to be at large. Id. at VI(C).

According to the petition, Amador had previously been convicted of four sexually violent offenses, which included 1995 convictions for four (4) counts of lewd act/assault, committed upon two female minors, aged six (6) and nine (9) years old. Id. at IV(7)and (8). Additionally, the petition identified two additional incidents of sexual impropriety, consisting of an arrest for sexual abuse against a child under fourteen (14) years of age in 1985, and another arrest for sexual abuse of a child under fourteen (14) years of age in 1991. Id. at IV(9). The petition further provided that on February 18, 1999, Dr. Harry S. McClaren, Ph.D, interviewed

---

[1](...continued)
offense. Fla. Stat. § 394.915(5). The person is entitled to a trial within thirty (30) days of the probable cause determination, Fla. Stat. § 394.916(1); and, is entitled to the assistance of counsel, and the appointment of counsel if indigent. Fla. Stat. § 394.916(3). The trial is civil in nature, and requires the State to prove by "clear and convincing evidence" that the person qualifies as a sexually violent predator; and, if determined by jury, "the verdict must be unanimous." Fla. Stat. § 394.917(1).

Amador and concluded that he "suffers from an abnormality or personality disorder which makes him likely to engage in acts of sexual violence if not confined in a secure facility for long term control, care, and treatment." Id. at IV(11).[2] Consequently, on February 19, 1999, the Department of Children and Families' multidisciplinary team filed its report stating that Amador "appears to meet the criteria of a sexual predator" and recommended that the State Attorney's Office, Twentieth Judicial Circuit, pursue civil commitment of Amador pursuant to the Jimmy Ryce Act. Id. at IV(13),(14).

Circuit Judge William Blackwell issued an "Order Finding Probable Cause," on February 19, 1999, finding that "probable cause exists to believe that . . . George Amador meets the definition of a sexually violent predator and should be detained for further proceedings under the Jimmy Ryce Act." App. 3, Exh. 2. Judge Blackwell also issued a "Warrant for Custodial Detention Pursuant to Section 916.35, Florida Statutes," ordering that Amador be detained, upon expiration of his sentence, and transferred to the custody of the Department of Children and Families for transport to the Martin Treatment Center, or other such appropriate secure facility. App. 3, Exh. 3.

On April 30, 1999, Amador filed an "Application For Appointment Of Public Defender and Affidavit of Indigence." App.

---

[2]A copy of Dr. McClaren's report is attached to the Petition.

3, Exh. 4.  On May 27, 1999, Amador, through counsel, filed "Respondent's Motion to Dismiss Petition for Involuntary Civil Commitment on the Grounds That the Time Requirements of Florida Statute 916.36 Have Not Been Met." App. 3, Exh. 5.  In particular, Amador argued that dismissal of the petition was warranted because more than thirty days had passed since the finding of probable cause, Amador had not been brought to trial to determine whether he was a sexually violent predator, and no continuances had been sought by the parties nor ordered by the court.  See generally id.

On June 21, 1999, after hearing argument, Circuit Court Judge Brousseau, denied Amador's motion.  App. 3, Exh. 6.  That same day, the State filed an "Amended Petition for Involuntary Civil Commitment Under F.S. 916 Jimmy Ryce Act."  App. 3, Exh. 7.  The amended petition provided the following additional factual allegation:  on February 22, 1999, doctors Chris Robinson and Jeffrey Benoit interviewed Amador and both found that Amador "suffers from Pedophilia and Antisocial Personality Disorder which makes him likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment."  Id. at IV(13) and (14).

On August 26, 1999, Amador, through his attorney, filed a "Motion for Release From Custody of Department of Children and Family Services on the Grounds That Time Requirements of Florida Statute 916.35 Have Not Been Met."  App. 3, Exh. 8.  Amador raised the same argument that he previously raised in his first motion to

dismiss, except, as relief, Amador sought only release from the custody of the Department of Children and Families, instead of dismissal of the petition for involuntary civil commitment. <u>See generally</u> <u>id.</u> Circuit Judge Brousseau held a hearing on October 4, 1999, and denied Amador's motion. App. 3, Exh. 9.

On December 16, 1999, counsel for Amador filed a Petition for Writ of Habeas Corpus in the Second District Court of Appeal seeking emergency relief. App. 3, Exh. 10. As relief, Amador sought dismissal of the State's petition for involuntary civil commitment, release from the custody of the Department of Children and Families, and reversal of Circuit Judge Brousseau's July 15, 1999 and October 4, 1999 orders. <u>See</u> <u>generally</u> <u>id.</u> Amador again argued that dismissal of the civil commitment petition under the Jimmy Ryce Act was warranted because more than thirty days had passed since the finding of probable cause, he had not been brought to trial to determine whether he was a sexually violent predator, and no continuances had been sought by the parties nor ordered by the court. <u>Id.</u> at 22-23. The Second District Court of Appeal transferred the petition for writ of habeas corpus to the Fourth District Court of Appeal pursuant to <u>Valdez v. Moore</u>, 745 So. 2d 964 (Fla. 2d DCA 1999). App. 3, Exh. 11. The Fourth District Court of Appeal directed the State to show cause why relief should not be granted. App. 3, Exh. 12. The State filed a Response to the Petition for Writ of Habeas Corpus, and counsel for Amador filed a reply to the State's Response to Petition for Writ of

Habeas Corpus App. 3, Exhs. 13-14.  On January 26, 2000, the Fourth District Court of Appeal transferred the matter back to the Second District Court of Appeal, finding that it lacked jurisdiction to rule on the matter.  Amador v. State, 766 So. 2d 1061 (Fla. 4th DCA 2000); App. 3, Exh. 15.  On July 11, 2000, the Second District Court of Appeal issued an order directing that Amador be released from custody.  Amador v. State, 780 So. 2d 66 (Fla. 2d DCA 2000); App. Exh. 17.

On July 14, 2000, the State filed a motion to stay the district court's order pending the State seeking a rehearing of the issue.  App. 3, Exh. 18.  On July 19, 2000, the State obtained a stay of Amador's release pending rehearing.  App. 3, Exh. 20.  On July 25, 2000, the State filed a "Motion for Rehearing and/or Motion for Certification of Question of Great Public Importance and a Motion for Rehearing En Banc."  App. 3, Exh. 19.

On October 6, 2000, while the stay of Amador's release was in effect and the State's motion for rehearing and certification of a question were pending, counsel for Amador sought a continuance of Amador's civil commitment trial.  App. 3, Exh. 22.  In particular, Amador, who was represented by counsel, entered into an agreement with the State in which Amador agreed to waive his right to pretrial release from custody regardless of the district court's ruling on the motion for rehearing, in exchange for a continuance of his commitment trial, which was scheduled for October 24, 2000, so his counsel could have additional time to prepare his defense.

See generally, id. Specifically, the agreement executed by Amador, in pertinent part, provided:

> 3. Respondent herein, George Amador, hereby agrees that he will waive his right to pretrial release even if the stay, currently in effect, is lifted and he is otherwise eligible for release and will remain in the custody of the Department of Children and Families until the conclusion of his trial.

Id., Exhibit "A" to Respondent's Motion for Continuance, ¶3. Amador also specifically represented that he was "entering this agreement freely and voluntarily and without any pressure, threats or coercion by any person including his counsel." Id. at ¶4. On December 7, 2000, the State District Court of Appeal denied the State's motion for rehearing and certification of a question. Amador v. State, 780 So. 2d 66 (Fla. 2d DCA 2000); App. 3, Exh. 21.

Thereafter, on December 8, 2000, the State received a *pro se* "Motion to Strike Signature on Waiver" filed by Amador in the trial court. App. 3, Exh. 23. In his motion, Amador claimed that he was under duress when he executed the agreement to waive pretrial release in exchange for a continuance of his commitment trial. Id. at Argument, ¶4. Amador explained that he was required to file the motion *pro se*, because his counsel "said that he would have to testify against [him]." Id. at ¶1.

On December 12, 2000, Amador filed a *pro se* "Amended Motion to Strike Signature on Waiver" and a *pro se* "Emergency Motion to Set for Hearing and For Immediate Release." App. 3, Exh. 24. Both *pro se* motions re-alleged the same factual averments made in his

previously filed *pro se* motion to strike signature, but added that the Second District Court of Appeal had denied the State's motion for rehearing and certification of a question on December 7, 2000. See generally Id.

On March 1, 2001, a hearing was held on Amador's *pro se* motions. According to the clerk's typewritten notes, Amador's counsel was present at the hearing, and State Circuit Judge Brousseau heard testimony from Amador. App. 3, Exh. 25. The judge took "judicial notice" that Amador had signed the waiver. Id. The judge, in open court, denied Amador's motions in open court, granted defense counsel's motion to withdraw, and agreed to appoint Amador new counsel. Id. Subsequently, on March 27, 2001, the court entered a written order denying Amador's motion to strike signature on waiver was entered. App. 3, Exh. #26.

On June 11, 2001, Amador filed a *pro se* petition for writ of mandamus with the Second District Court of Appeal. App. 3, Exh. 27. In this petition, Amador contended that his continued custody by the Department of Children and Families violated the district court's December 7, 2000 order, granting him release in Amador v. State, 780 So. 2d 66 (Fla. 2d DCA 2000). See generally id. As relief, Amador sought an order compelling his release from custody in accordance with the court's December 7, 2000 order. Id. Amador did not advise the district court that he had entered into the October 6, 2000 agreement, in which he agreed to waive pretrial

release.  See generally id.  The Second District Court of Appeal directed the State to respond to the petition for writ of mandamus. App. 3, Exh. 28.  The State, in its Response, informed the district court of the October 6, 2000 agreement, and the subsequent motion to strike the same filed by Amador, which had been denied by the circuit court.  App. 3, Exh. 29.

On June 26, 2001, the Second District Court of Appeal entered an order asking the trial court if Amador had been appointed substitute counsel, noting that Amador's previous court appointed counsel had been allowed to withdraw and Amador had filed the petition for writ of mandamus pro se.  App. 3, Exh. 30.  On June 29, 2001, Amador filed a motion to strike the State's Response and argued that the October 6, 2000 agreement was executed under duress.  App. 3, Exh. 31.  On July 10, 2001, the Second District Court of Appeal denied Amador's motion to strike the State's response.  App. 3, Exh. 32.  In a second order dated July 11, 2001, the Second District Court of Appeal requested that the State show cause why the October 6 2000 waiver of release from custody should not be deemed expired.  App. Exh. 33.  The district court expressed concern because it appeared that Amador had been in custody without counsel since the March 1, 2001 hearing, and that the agreement was executed to provide defense counsel with time to prepare for the commitment trial, but it appeared that no counsel was preparing for trial as contemplated by the terms of the waiver.  See generally, id.

On July 23, 2001, the State filed a response to the order to show cause order. App., Exh. 34. In its response, the State advised the court that the public defender's office continued to file motions on Amador's behalf with the trial court and continued to prepare for Amador's pending commitment trial which had been scheduled for April 24, 2001. <u>See</u> <u>generally</u> <u>id.</u> In fact, despite having his order to withdraw granted in open court, previous court appointed attorney, assistant public defender, Mr. Richard Donnelly was the signatory on the various pleadings filed on behalf of Amador. <u>Id.</u> Indeed, at a April 20, 2001 status hearing, Amador, who appeared with Mr. Donnelly, advised the circuit court that he wished for Mr. Donnelly to continue to represent him. <u>Id.</u> The State explained that despite his previously stated position, on May 10, 2001, Amador filed a *pro se* motion requesting appointment of another counsel, and Mr. Donnelly filed a motion to withdraw on May 29, 2001. App. 3, Exh. 35, Motion Requesting "other Counsel" Pursuant to § 394.916(3). The circuit court scheduled a hearing for July 9, 2001. <u>Id.</u>, Notice of Hearing. On July 11, 2001, the court entered a written order permitting Mr. Donnelly to withdraw and appointing new counsel, Mr. Phillip Hamilton, to represent Amador. <u>Id.</u>, Order Granting Counsel's Motion to Withdraw and Appointment of Substitute Counsel. After reviewing the State's response, the Second District Court of Appeal entered an order on August 10, 2001, staying its issuance of a ruling on Amador's

petition for writ of mandamus in order that the circuit court could conduct further proceedings. App. 3, Exh. 36.

On August 30, 2001, the circuit court conducted a hearing, which was transcribed, to determine whether Amador wished to execute a new waiver of release from custody pending his commitment trial, and to reconstruct the record of the relevant commitment proceedings for the Second District Court of Appeal, which had not previously been transcribed by a court reporter. App. 3, Exh. 37. At the hearing, Amador refused to execute a new waiver. Id. After this refusal, the parties: Mr. Steve Maresca, Assistant State Attorney; Mr. Phillip Hamilton, Amador's recently appointed attorney; Mr. Richard Donnelly, Assistant Public Defender who had previously represented Amador; and, the court reconstructed a supplemental record, which consisted of testimony and parties' respective recollections regarding Amador's original waiver, the continuity of Amador's legal representation, and the general course of the commitment proceedings over the past two and one half years.

On September 13, 2001, a transcript of the August 31, 2001 proceeding, together with a status report on the case's progression to a commitment trial, was submitted to the Second District Court of Appeal. App. 3, Exh. 37. On October 3, 2001, the Second District Court of Appeal entered an order denying Amador's *pro se* petition for writ of mandamus. Amador v. State, 799 So. 2d. 1031 (Fla. 2d DCA 2001); App. 3, Exh. 38.

On November 27-29, 2001, Amador's civil commitment jury trial (case number 99-254-CP-02) was held.  App. 6, Vols. II, III,  V and VI.  The jury unanimously found Amador to be a sexually violent predator in need of control, care, and treatment.  Id., Vol. VI at 436.  On December 18, 2001, the trial court entered its Final Judgment/Order Determining Sexual Predator Status and directed that Amador be committed to the custody of the Department of Children and Family Services for long term control, care and treatment in a secure lock-down facility until such time as Amador's mental abnormality or personality disorder had so changed that it was safe for Petitioner to be at large.  App. A, Exh. 39.  Amador was thereafter transferred to the Florida Civil Commitment Center in Arcadia, Florida.

On December 26, 2001, Amador file a Notice of Appeal with the Second District Court of Appeal.  App. A, Exh. 40.[3]  Amador raised the same two issues he presents in the instant Petition in his direct appeal.  See generally id.  The parties briefed the issues for review.  App. 2, 3A, and 4.  On April 27, 2005, the appellate court per curiam affirmed without opinion.  In Re Commitment of George Amador v. State, 907 So. 2d 528 (Fla. 2d DCA 2005).  App. 7.

_____

[3]In addition to his direct appeal, Amador filed various other collateral motions with the circuit court.  See, App. 3, Exhs. 40, 41, 42 and 43.  In each of these collateral motions, Amador seeks relief on the basis that he was not brought to trial within thirty days of the filing of the petition for his civil commitment as a sexually violent predator.  These additional collateral motions are not relevant to the issue before the Court.

### III. Applicable § 2254 Law

Amador filed his timely[4] Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1664 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007). Under AEDPA, the standard of review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007). See also Parker v. Sec'y Dep't of Corr., 331 F.3d 764 (11th Cir. 2003). AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). Certain aspects of AEDPA govern this Court's review of the Petition.

#### A.   Federal Question

A federal court may only entertain an application for a writ of habeas corpus from a state prisoner who claims his custody violates the "Constitution or the laws or treaties of the United

---

[4]AEDPA imposes a one-year statute of limitations on § 2254 actions.   28 U.S.C. § 2244(d).   Respondent concedes that the Petition is timely.  Response at 12.  The Court agrees.

States." 28 U.S.C. § 2254(a). Questions of state law are generally insufficient to warrant review or relief by a federal court under § 2254. Estelle v. McGuire, 502 U.S. 62, 68 (1991); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983); Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000). Violations of a state rule of procedure, or of state law itself, is not itself a violation of the federal constitution. Wallace v. Turner, 695 F.2d 545, 548 (11th Cir. 1982); Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1989). "It is a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." Herring v. Sec'y. Dep't of Corr., 397 F.3d 1338, 1355 (11th Cir. 2005)(internal quotations and citations omitted). Although the determination of whether a constitutional decision of the Supreme Court is a matter of federal law, "[w]hen questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions." Danforth v. Minnesota, 128 S. Ct. 1029, 1048 (2008).

**B. Exhaustion**

For a ground asserted by a petitioner to warrant review by a federal court under § 2254, the petitioner must have first afforded the state courts an initial opportunity to address any federal issues. 28 U.S.C. 2254(b)(1)(A). This imposes a "total exhaustion" requirement in which all the federal issues must have first been presented to the state courts. Rhines v. Weber, 544

U.S. 269, 274 (2005). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). See also Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)); Duncan v. Henry, 513 U.S. 364, 365 (1995)("exhaustion of state remedies requires that petitioners 'fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights'").

A petitioner must present the same claim to the state court that he now requests the federal court to consider. McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)(citations omitted); Kelly v. Sec'y for the Dep't of Corr., 377 F. 3d 1317, 1343-44 (11th Cir. 2004). Thus, the exhaustion requirement is not satisfied if the claims raised before the state court were not raised in terms of federal law. Gray v. Netherland, 518 U.S. 152, 162-63 (1996); Jimenez v. Fla. Dep't of Corr., 481 F.3d 1337, 1342 (11th Cir. 2007).

If a petitioner fails to exhaust a claim, the court may dismiss the petition without prejudice to permit exhaustion, if appropriate. Pliler v. Ford, 542 U.S. 225, 227 (2004); Rose v.

-16-

<u>Lundy</u>, 455 U.S. 509, 519-20 (1982).  Alternatively, the court has the discretion to grant "a stay and abeyance to allow the petitioner to exhaust the unexhausted claim."  <u>Ogle</u>, 488 F.3d at 1370 (citations omitted).

## C. Procedural Default

"A claim is procedurally defaulted if it has not been exhausted in state court and would now be barred under state procedural rules."  <u>Mize v. Hall</u>, 532 F.3d 1184, 1190 (11th Cir. 2008).  "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures."  <u>Henderson</u>, 353 F.3d at 891 (quoting <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001)).  A procedural default may also result from non-compliance with state procedural requirements.  <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 729-30, <u>reh'g</u> <u>denied</u>, 501 U.S. 1277 (1991).

> Federal courts are barred from reaching the merits of a state prisoner's federal habeas claim where the petitioner has failed to comply with an independent and adequate state procedural rule.  <u>Wainwright v. Sykes</u>, 433 U.S. 72, 85-86, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977).  When a state court correctly applies a procedural default principle of state law, federal courts must abide by the state court decision, <u>Harmon v. Barton</u>, 894 F.2d 1268, 1270 (11th Cir. 1990), but only if the state procedural rule is regularly followed, <u>Ford v. Georgia</u>, 498 U.S. 411, 424, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991). . . .

<u>Siebert v. Allen</u>, 455 F.3d 1269, 1271 (11th Cir. 2006), <u>cert.</u>

denied, 127 S. Ct. 1823 (2007); see also Baldwin v. Johnson, 152 F.3d 1304, 1317 (11th Cir. 1998) (finding that federal courts may not review a claim that a petitioner procedurally defaulted under state law if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, and the bar presents an independent and adequate state ground for denying relief), cert. denied, 526 U.S. 1047 (1999). This is true where the appellate court silently affirms the lower court procedural bar since federal courts should not presume an appellate state court would ignore its own procedural rules in summarily denying applications for post-conviction relief. Tower v. Phillips, 7 F.3d 206, 211 (11th Cir. 1993).

A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances. First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error. House v. Bell, 547 U.S. 518, 536-37 (2006); Mize, 532 F.3d at 1190. "Cause" ordinarily requires a petitioner to demonstrate "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003) (quoting Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999)). Constitutionally ineffective assistance of counsel can constitute cause if that claim is not itself procedurally defaulted. Edwards v. Carpenter,

529 U.S. 446, 451-52 (2000). To show "prejudice," a petitioner must demonstrate that there is "at least a reasonable probability that the result of the proceeding would have been different." Henderson, 353 F.3d at 892.

Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice. House, 547 U.S. at 536; Edwards, 529 U.S. at 451; Henderson, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." Henderson, 353 F.3d at 892. See also House, 547 U.S. at 536-37 (prisoner asserting actual innocence must establish that, "in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt") (citation omitted).

**D. Deference to State Court Decision**

A federal court must afford a high level of deference to the state court's decision. See, e.g., Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted  in  a  decision  that  was  based  on  an
              unreasonable determination of the facts in light of
              the   evidence   presented   in   the   State   court
              proceeding.

28 U.S.C. § 2254(d).   See Brown v. Payton, 544 U.S. 133, 141

(2005); Price v. Vincent, 538 U.S. 634, 638-39 (2003).   A state

court's summary rejection of a claim, even without explanation,

qualifies  as  an  adjudication  on  the  merits  which  warrants

deference.   Ferguson, 527 F.3d at 1146; Wright v. Sec'y Dep't of

Corr., 278 F.3d 1245, 1253-54 (11th Cir. 2002).   See also Peoples

v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied,

545 U.S. 1142 (2005).

        "Clearly established federal law" consists of the governing

legal principles, rather than the *dicta*, set forth in the decisions

of  the  United  States  Supreme  Court  at  the  time  the  state  court

issues  its  decision.    Carey  v.  Musladin,  549  U.S.  70,  74

(2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).   In

cases where nothing in the Supreme Court's jurisprudence addresses

the issue on point or the precedent is ambiguous and gives no clear

answer to the question, it cannot be said that the state court's

conclusion  is  contrary  to,  or  constitutes  an  unreasonable

application of, "clearly established Federal law."   Wright v. Van

Patten, 128 S. Ct. 743, 747 (2008); Mitchell v. Esparza, 540 U.S.

12, 15-16 (2003).

        A state court decision can be deemed "contrary to" the Supreme

Court's clearly established precedents within the meaning of §

2254(d)(1)  only  if:  (1)  the  state  court  applies  a  rule  that

contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is "materially indistinguishable" from those in a decision of the Supreme Court and yet arrives at a different result. Brown, 544 U.S. at 141; Mitchell, 540 U.S. at 15-16. Further, it is not mandatory for a state court decision to cite, or even to be aware of, the relevant Supreme Court precedents, "so long as neither the reasoning nor the result . . . contradicts them." Early v. Parker, 537 U.S. 3, 8 (2002); Mitchell, 540 U.S. at 16.

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown, 544 U.S. at 134; Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), cert. denied, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 120 S. Ct. at 1520). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18. Depending upon the legal principle at issue, there can be a range of reasonable applications. Yarborough

v. Alvarado, 541 U.S. 652, 663-64 (2004). Thus, the state court's decision is not subject to federal review *de novo*; rather, § 2254(d)(1) relief is only available upon a showing that the state court decision meets the "objectively unreasonable" standard. Id. at 665-66.

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). Where the credibility of a witness is at issue, relief may only be granted if it was unreasonable, in light of the evidence presented, for the state court to credit the testimony of the witness in question. Rice v. Collins, 546 U.S. 333, 338 (2006). Additionally, a factual finding by a state court is presumed to be correct and a petitioner must rebut this "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Miller-El v. Dretke, 545 U.S. 231, 240 (2005); Henderson, 353 F.3d at 890-91. This statutory presumption of correctness, however, "applies only to findings of fact made by the state court, not to mixed determinations of law and fact." Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001) (citation omitted).

## IV. Analysis

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court for purposes of ruling on the four Grounds

raised in the Petition. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, <u>Chandler v. McDonough</u>, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. <u>Schriro</u>, 127 S. Ct. at 1940; <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert. denied</u>, 541 U.S. 1034 (2004).

At the outset the Court deems significant that neither of Petitioner's grounds for relief challenge the legality of Petitioner's civil commitment trial itself. Rather, Petitioner contends that he is entitled to habeas relief because the State failed to adhere to the tenets of the Jimmy Ryce Act which resulted in: 1) Amador's initial detention subsequent to his release from incarceration; and, 2) Amador's subsequent continued detention while awaiting the commencement of his civil commitment trial. With this caveat in mind, the Court will address the two grounds raised in the Petition.

**A. Ground One**

Petitioner argues that the State circuit court lost jurisdiction when the State failed to bring him to trial within the mandatory 30-day provision set forth in the Jimmy Ryce Act. Petition at 6. In his Supplement, Petitioner provides the following elaboration of ground one:

In this instant case, the lower tribunal court lost
jurisdiction to proceed with the involuntary civil
commitment case against Mr. Amador due to the failure to
conduct a trial within the first thirty (30) days from
the date the lower tribunal court made its Order Finding
Probable Cause with Motion "R: 82 - 84" as mandated by §
394.916 (1) Florida Statutes.

Supplement at 5-6. Petitioner presents the following "supporting

facts" in connection with ground one:

The lower tribunal court lost jurisdiction to proceed
with the Involuntary Civil Commitment of Mr. Amador in
Case Number 99-254-CP-02, for the lower tribunal court
failed to conduct a trial within the thirty (30) days,
after the determination of probable cause that commenced
on February 19, 1999. Additionally, neither Mr. Amador
nor the State requested a continuance for a trial date
during the first thirty (30) days. Moreover, neither did
the lower tribunal court set or conduct a trial during
the first thirty (30) days following its February 19,
1999, Order Finding Probable Cause with Motion.

Id. at 6. Additionally, Petitioner refers the Court to his

Memorandum, which cites to the Florida Supreme Court holdings in

State v. Goode, 830 So. 2d 817 (Fla. 2002) and State v. Kinder, 830

So. 2d 832 (Fla. 2002).[5] Petition at 6, Memorandum (Doc. #3) at 4.

In response, Respondent submits that ground one is a matter of

State law and is not cognizable in a federal habeas action.

Response at 13. Further, the Respondent argues that to the extent

that Petitioner seeks to assert a federal dimension to this claim,

_____

[5]The Florida Supreme Court determined that the time provisions
set forth in the Jimmy Ryce Act were mandatory. However, the court
also concluded that the "time provisions" were not "intended as a
rigid jurisdictional bar to further proceedings." Goode, 830 So.
2d at 828. Consequently, the Florida Supreme Court held that
"although the language requiring the trial to be held within thirty
days is mandatory, the language is not necessarily jurisdictional."
Id.

the claim is unexhausted in the State courts, and now procedurally barred. Id. at 14. Additionally, Respondent argues that any claim for relief on this ground is moot, since Petitioner has now had his civil commitment trial and been found to be a sexually violent predator under the Jimmy Ryce Act. In particular, Respondent points out that the only relief to which Petitioner is entitled, if his claim is proven, is dismissal of the pending Ryce proceedings without prejudice. Id. at 15-16 (citing Osborne v. State, 907 So. 2d 505 (Fla. 2005)). Finally, Respondent maintains that, if the Court should evaluate the claim on the merits, Petitioner cannot show that the State courts' rulings on this issue were contrary to § 2254(d).

The Court finds that it need not reach the merits of this ground because this claim involves only issues of State law; and, thus is not proper for federal habeas review. Danforth v. Minnesota, 128 S. Ct. at 1048. Petitioner fails to articulate a violation of a federal law or constitutional right in connection with this claim in his Petition *sub judice*. See generally Petition and Memorandum. Instead, Petitioner raises this claim in terms of an alleged violation of State law, relying only on State statutes and case law in support of his claim. Id. Petitioner's passing reference to a "due process" violation in his Memorandum, Id. at 10, fails to transform this issue into a federal issue. See Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (holding that the "limitation on federal habeas review is of equal force when a

petition, which actually involves state law issues, is couched in terms of equal protection and due process").

Moreover, as reflected in the record before the Court, Petitioner never presented the State courts with the federal dimension of this ground. While Petitioner actively pursued this ground to the State courts, he raised this claim in terms of a violation of State law only, addressing his substantive arguments only to Florida law. The purpose of the exhaustion requirement is "to afford the state courts a meaningful opportunity to consider allegations of legal error without the interference of the federal judiciary." Vasquez v. Hillery, 474 U.S. 254, 257 (1986). The Supreme Court has strictly construed the exhaustion requirement, noting that "if a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan v. Henry, 513 U.S. 364, 365-66 (1995). Thus, alternatively, this claim was not properly exhausted in the State court, and is now procedurally barred.[6] 28 U.S.C. § 2254(b); Rhines v. Weber, 544 U.S. at 274; Mize v. Hall, 532 F.3d 1184, 1190. Further, because Petitioner does not articulate either cause or prejudice to excuse his default, this ground is procedurally defaulted. Mize, id.

_____

[6]See Smith v. State, 741 So. 2d 585 (Fla. 5th DCA 1999)(recognizing prohibition against successive appeals).

**B.    Ground Two**

Petitioner contends that the State trial court committed an error when the court accepted "unsworn" letters from the doctors' February 18, 1999 and June 21, 1999 evaluations of Amador. Petition at 8.    In his Supplement, Petitioner provides the following elaboration of ground two:

> The lower tribunal court Allowed a manifest injustice Against Mr. Amador pursuant to Chapter 916.33(3)E),which provides in pertinent part:
>
>> "...the team, within 45 days after receiving notice shall assess whether the person meets the definition of a sexual violent predator and provide the State Attorney with its written assessments and recommendation."
>
> Additionally, the lower tribunal court committed error by accepting unsworn letters of the doctor's evaluation of Mr. Amador on February 18, of 1999 and June 21, 1999.

Supplement at 7-8.    Petitioner presents the following "supporting facts" in connection with ground two:

> The thrust of Mr. Amador's argument centers on the fact that the State and the members of the Multidisciplinary Team (MDT) for the Department of Children and Families (DCF) operated illegally in applying the provisions of Chapter 916.31-916.49, Fla. Stat. (Supp. 1998) (commonly referred to as the "Jimmy Ryce Act" or the "Act."  The Act was subsequently amended and renumbered and now appears at § 394.910 - § 394.931, Fla. Stat. (1999)). They did so by applying provisions of the amended statute to Mr. Amador despite the fact these certain provisions were not officially effective as law. Certain statutory language contain in these provisions did not exist within § 916.31- § 916.49 at the time the State filed its Petition seeking to have Mr. Amador Involuntarily Civilly Committed as a sexually violent predator (SVP).

Id. at 8.  Petitioner also refers the Court to his Memorandum for the factual development and legal argument in support of this

claim. Petition at 8. Therein, Petitioner contends that he was improperly evaluated by Dr. McClaren, who authored a report that was used as the predicate for the circuit court finding probable cause to detain Petitioner under the Jimmy Ryce Act. See generally Memorandum at 12-20.[7] Petitioner argues that the provision, which authorizes a clinical evaluation/personal interview of a candidate, did not go into effect until May 26, 1999, which was _after_ the State commenced civil commitment proceedings against Petitioner. Id. at 15. Further, Petitioner argues that the reports authored by the doctors were improperly considered by the circuit court in its finding of probable cause, because the reports constitute inadmissible hearsay. Id. at 17. Petitioner directs the Court to various Florida statutes and State court decisions in support of his various contentions. See generally id.

In response, Respondent raises essentially the same arguments as advocated in ground one. In particular, Respondent submits that this ground solely concerns matters of State law that are not cognizable in a federal habeas action. Response at 19-20. Further, Respondent points out that Petitioner, neither in the instant Petition nor in his State court motions, ever raised a federal dimension to this claim; and, thus any federal claim is unexhausted and now procedurally barred. Id. at 21-22.

---

[7]Petitioner was interviewed and evaluated by Dr. McClaren on February 19, 1999, and was subsequently interviewed and evaluated by Drs. Chris Robinson and Jeffrey Benoit on February 22, 1999.

The Court agrees that the issues presented in ground two fail to raise a federal issue which warrant habeas relief. Petitioner makes no reference to any federal law or constitutional right anywhere in his Petition or Memorandum. See generally Petition and Memorandum. The subject provision to which Petitioner objects establishes one of many procedural requirements that were enacted by the State legislature to effectuate the Jimmy Ryce Act. "States are free to announce their own state-law rules of [ ] procedure, and apply them retroactively in whatever manner they like." Danforth v. Minnesota, 128 S. Ct. at 1053 (Chief Judge Roberts, dissent). Petitioner fails to identify how providing him with a clinical evaluation, which is arguably a procedural safeguard, violated any federal law or infringed upon his federal constitutional rights.[8]

Petitioner similarly fails to raise or identify a violation of any federal law or constitutional right concerning the hearsay claim related to the doctors' reports, which were attached to the State's petition presented to the circuit court for its determination as to whether probable cause existed to detain Petitioner as a sexual predator. "What is or is not hearsay evidence in a state court trial is governed by state law." Gochicoa v. Johnson, 118 F.3d 440, 445 (5th Cir. 1997), cert.

---

[8]Respondent points out that before the subject statutory amendment was enacted, voluntary interviews of candidates were neither required nor prohibited. Response at 20, n.5.

denied, 522 U.S. 1121 (1998).  Significantly, Petitioner does not contend, and a review of the commitment trial transcript does not reveal, that Amador was denied an opportunity to challenge the doctors' findings in their reports in his civil commitment trial. Nor does Petitioner identify any federal issue in connection with the fact that the circuit court accepted "unsworn" reports.[9]

Alternatively, the record reflects that Petitioner never presented the federal dimension of any of the issues raised in this ground to the State courts.  Instead, Petitioner advanced this ground to the State courts in terms of a violation of only State law.  Consequently, this ground was not properly exhausted in the State court, and is now procedurally barred.  28 U.S.C. § 2254(b); Rhines v. Weber, 544 U.S. at 274; Mize v. Hall, 532 F.3d 1184, 1190.  Petitioner does not articulate either cause or prejudice to

---

[9]In Kephart, decided after Petitioner's civil commitment trial, the Florida Supreme Court held that due process requires that the probable cause petition must be supported by sworn proof and "the sworn proof for the probable cause petition may be supplied by the prosecutor by swearing to the allegation in the petition or by affidavit attached to the petition from one or more of the mental health professionals."  Kephart v. Hadi, 932 So. 2d 1086, 1090-1092 (Fla. 2006).  The court allowed the state seven days to cure the deficiency for pending cases, with a 24 hour cure period to apply to cases arising after the effective date of the opinion.  Id. at 1093-1094.  Notably, the ruling in Kephart was rendered by the Florida Supreme Court, not the United States Supreme Court and, thus is not federal law.  While the Kephart court recognized a due process issue, it did so only in terms of State law.  Id. at 1090-1092.  Moreover, the Kephart court concluded that the relief was not retroactive.  Id. at 1094-1095.

excuse his default, and thus, this ground is procedurally defaulted. <u>Mize</u>, <u>id.</u>

ACCORDINGLY it is hereby

**ORDERED:**

1.   The Petition for Writ of Habeas Corpus (Doc. #1) as Supplemented (Doc. #6) is **DISMISSED** for the reasons set forth above.

2.   The **Clerk of Court** shall terminate any pending motions, enter judgment accordingly, and close this file.

**DONE AND ORDERED** in Fort Myers, Florida, on this __14th__ day of September, 2009.

John E. Steele

JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record